UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANDRES GOMEZ, on his own and on behalf of all other individuals, :
:
:
Plaintiff, :
: Case No. 17-cv-21628-CMA
v. :
:
LEGO SYSTEMS, INC., and LEGO BRAND RETAIL, INC., :
:
:
Defendants. :

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS'
RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendants LEGO Systems, Inc. and LEGO Brand Retail, Inc. (collectively "LEGO" and/or "Defendant"), by and through their undersigned attorneys, respectfully submit this Reply Memorandum in Further Support of their Motion to Dismiss the Amended Complaint filed by plaintiff, Andres Gomez ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In further support of this Motion, Defendants state as follows:

**I.      INTRODUCTION**

Plaintiff has filed nearly-identical cases in this District against many retailers, arguing that their websites violate the Americans with Disabilities Act (the "ADA"). Earlier this year, a court in this District rejected the same argument Plaintiff makes in his opposition, noting that "a website that is wholly unconnected to a physical location is generally not a place of public accommodation under the ADA." *See Gomez v. Bang & Olufsen Am., Inc.*, 2017 U.S. Dist. LEXIS 15457, *10 (S.D. Fla. Feb. 2, 2017). In an attempt to overcome this rejection, Plaintiff updates his failed arguments by attempting to invent a connection between Defendants' website (the "Website") and the company's three stores in Florida. No such connection exists, however, and without it, Plaintiff's entire argument fails.

4823-0178-2860v.3                                                        1

LEGO did not "state[] that it would be unfair to require [it] to make its Website accessible to blind persons," as Plaintiff argues. *See* Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Amended Complaint (DE-37) ("Plaintiff's Response," "Pl. Resp." or Opposition") at 1. Instead, LEGO argued in part in its Motion that Title III of the ADA does not apply to the Website. LEGO made that argument because there is no nexus between the Website and any physical LEGO retail store. In an attempt to overcome this aspect of the Motion, Plaintiff resorts to a metaphysical argument that the Website is an "extension to LEGO's retail stores." *Id*. at 2. Plaintiff has created this so-called "extension" mechanism because without it, he has no case. This so-called "extension" does not exist independent of Plaintiff's Amended Complaint.

Notably, Plaintiff's opposition fails to address the one case in this District that is on all fours with the instant matter — the *Bang & Olufsen* case that Plaintiff himself lost. There, Judge Lenard dismissed Plaintiff's action for the same reason this action should be dismissed: "the ADA does not require a place of public accommodation to have a website at all. All the ADA requires is that, if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-mortar store." *Id*. at *13. Plaintiff does not argue that he tried to access a brick-and-mortar LEGO store and was impeded in his attempt. Instead, he simply argues that he could not access information about those stores on the Website and because the Website is an "extension" of a physical store, it was not accessible to him.

Instead of addressing *Bang & Olufsen Am.*, the majority of Plaintiff's Opposition cites cases that were decided by courts outside of this District, outside of this Circuit, and that are otherwise largely distinguishable. If Defendant's motion to dismiss can be heard to argue in part that Title III of the ADA does not apply to the Website, Plaintiff's opposition is based solely on

the argument that "yes, it does." Plaintiff's opposition, however, provides this Court with no actual reason why Title III of the ADA applies to websites, or specifically why it should apply to this Website. *Bang & Olufsen Am.* makes clear that under the facts plead in the Amended Complaint, it should not. The Website is not a place of public accommodation. The ADA, its implementing regulations, and relevant authority in this District and the Eleventh Circuit make this clear.

In addition to relying on *Bang & Olufsen Am.*, LEGO also argued that *Robles v. Dominos Pizza LLC*, 2017 WL 1330216 (C.D. Calif., March 20, 2017) establishes that there are no federal regulations for website accessibility. In its Notice of Proposed Rulemaking of July 2010 ("NOPR"), the DOJ specifically acknowledged that "clear guidance on what is required under the ADA does not exist." Although the DOJ announced its intention to establish regulations for website accessibility in the NOPR in the future, it has not even commenced the process. As such, LEGO and all other operators of websites in the United States are targets for actions like these where plaintiffs demand that companies meet accessibility standards that are not articulated in any law or regulation." Such an approach violates Defendant's due process rights, as Judge Otero held in *Dominos*.

## II.     THE WEBSITE IS NOT A "PLACE OF PUBLIC ACCOMMODATION"

Plaintiff alleges in his Amended Complaint and now argues in his Opposition that Defendant's "stores" are "public accommodations" (DE-24, ¶¶ 21, 60; Pl. Resp. at 6, ¶ 13).[1] That argument is based on his "extension" theory. (DE-24, ¶ 33; Pl. Resp. at 2.) Judge Lenard already rejected Plaintiff's "extension" argument and dismissed one of his many similar complaints that he has filed in this District. *See Bang & Olufsen Am., Inc.*, 2017 U.S. Dist.

---

[1]     Plaintiff is correct that Defendant's moving brief cited to Plaintiff's Original Complaint [DE-1], however, the paragraphs cited are to the Amended Complaint [DE-24].

LEXIS 15457, *7.  Plaintiff attempts the same thing in his Opposition and argues that the Website is an "extension to Defendant's retail stores." (DE-34 at 2.)  The Website is not an extension of anything — it stands alone and is a means by which Defendants communicate with the outside world.  In that regard, it is similar to a print advertisement.  The ADA does not address virtual spaces, like websites or print advertisements.  The Court in *Access Now* held that "to fall within the scope of the ADA as presently drafted, a public accommodation must be a physical, concrete structure.  To expand the ADA to cover 'virtual spaces' would be to create new rights without well-defined standards." *Access Now, Inc. v. Southwest Airlines, Co.*, 227 F. Supp. 2d 1312, 1318 (S.D. Fla. 2002), *appeal dismissed*, 385 F. 3d 1324 (11th Cir. 2004).

Plaintiff's argument in his Opposition does not square with the plain language of the statute or the implementing regulations of the ADA.  Plaintiff demands that the Court order adherence to guidelines to accessibility based on proposed rulemaking that DOJ has not yet started.  Granting such relief to a private citizen will potentially result in a body of disparate laws created by individuals like Plaintiff.  If guidelines for accessibility are to be established, this should not be done on an *ad hoc* basis by individuals demanding different standards.  Any guidelines should be established by the government through proper rulemaking procedures (*i.e.*, notice to stakeholders with an opportunity for submission of comments).

Websites are not addressed in the 1991 Title III regulations, the Code of Federal Regulations that interpret the ADA, or even in the 2010 ADA Standards for Accessible Design.  The ADA specifically identifies only certain categories of "public accommodation." 42 U.S.C. § 12181(7)(A)-(L).  The first determination is whether the language of the statute has a plain and unambiguous meaning with regard to the particular dispute in the case.  *See Rendon v. Valleycrest Prods. Ltd.*, 294 F.3d 1279, 1283 n. 6, *reh'g denied*, 2002 U.S. App. LEXIS 27593

(11th Cir. 2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).  When it does, there is no need to look further.  *Id.*  To bridge the enormous gap between the absence of the required statutory language and his demand, Plaintiff invented his "extension" argument.

Federal regulations do not include websites in their definition of "place of public accommodation" as a "facility, operated by a private entity, whose operations affect commerce and fall within at least one" of the 12 specified categories set forth in 42 U.S.C. §12181(7).  *See* 28 C.F.R. 36.104.  Bringing websites into some form of compliance with the ADA requires initiation of the legislative process so that all have a voice in the process and together everyone creates well-defined standards.  *Access Now*, 227 F. Supp. 2d 1321 n.13.  Plaintiff's Original Complaint actually suggested some standards.  His Amended Complaint offers none.

The plaintiffs' argument in *Access Now* was that Southwest's website was a place of public accommodation and fell within the scope of Title III.  *Id.* at 1317, 1319.  The Court, however, ruled that the plaintiffs were "unable to demonstrate that Southwest's website impedes their access to a specific, physical, concrete space such as a particular airline ticket counter or travel agency."  *Id.* at 1321.  "Having failed to establish a nexus between [the website] and a physical, concrete place of public accommodation, Plaintiffs have failed to state a claim upon which relief can be granted under Title III of the ADA."  *Id.*  Plaintiff's Opposition makes clear that he was not denied access to any physical, concrete space.  All of his arguments (and his allegations) are hypothetical and expedient for purposes of this action.  They are not based on reality.

Plaintiff's Amended Complaint and his Opposition demands not only that this Court expand the application of the ADA to apply to something not mentioned in the statute — websites — but also that this Court find that compliance with the ADA requires compliance with

standards that are not mentioned in the statute and that Plaintiff fails to identify in his Amended Complaint. His Opposition offers nothing but his own conclusions.

Plaintiff invests much of his capital in Judge Scola's recent decision following the trial in *Gil v. Winn-Dixie Stores, Inc.*, Case No. 16-cv-23000, DE-63, (S.D. Fla., June 13, 2017) and a Statement of Interest filed by DOJ (DE-23) in that case. *Winn-Dixie* is distinguishable for several reasons. That decision was rendered following several days of bench trial, which developed facts completely different from the facts alleged in Plaintiff's Amended Complaint here. One big distinction is that Winn-Dixie had hundreds of physical locations. Plaintiff argues that LEGO has only three. [DE-37 at 13, ¶ 30.][2]

In addition, the court concluded that there were several direct connections between Winn-Dixie's website and its physical stores. For example, the website had coupons that could be used in the physical stores, and consumers could submit requests to refill prescriptions online and pick them up in those stores. This led Judge Scola to "determine that Winn-Dixie's website had a sufficient nexus to the physical site to subject the website to Tile III of the ADA." [DE-37 at 11, ¶ 26.]

Judge Lenard conducted the same analysis that Judge Scola conducted and came to the opposite conclusion in the *Bang & Olufsen* case. In that case, there were no connections between the company's website and its physical locations. The two were entirely separate. Thus, Judge Lenard concluded that "Plaintiff failed to allege any facts that Bang and Olufsen's website impeded his own personal enjoyment of goods and services offered at its retail locations." *Bang & Olufsen*, 2017 U.S. Dist. LEXIS 15457, *11. Accordingly, Plaintiff's "generalized grievances" were deemed to be unconnected to any harm he actively suffered at the physical location. *Id*.

---

[2]     Plaintiff is correct, LEGO has three physical locations in Florida.

The same is true here.  Unlike in *Winn-Dixie*, Plaintiff's complaints about the Website are not tied to any of Defendant's physical locations.  (DE-24, ¶¶ 43-46.)  Plaintiff's generalized grievances are a far cry from what Judge Scola found.  Thus, even if Plaintiff had some difficulties accessing some of the content on the Website, Plaintiff has not pled that those alleged difficulties in any way impede his own personal enjoyment of goods and services offered at any of Defendants' physical stores.  The fact that LEGO has physical "locations" in Florida only matters to Plaintiff so that he can make his "extension" argument.  They are immaterial to the actual allegations in his Amended Complaint because based on a reading of that Complaint and his Opposition, Plaintiff never intended to utilize a physical LEGO stores.  Instead, his "grievance seems to be that [the LEGO] website does not provide a blind person with the same online-shopping experience as non-disabled persons." *Bang & Olufsen Am.*, 2017 WL 1957182, at *4.  As Judge Lenard noted, however, "the ADA does not require places of public accommodations to create full-service websites for disabled persons. In fact, the ADA does not require a place of public accommodation to have a website at all. All the ADA requires is that, if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-mortar store. *Id*., at *4.  Plaintiff's claims are not actionable.

Plaintiff also makes much about the Statement of Interest that the DOJ filed in *Winn-Dixie*.  Judge Otero addressed that same issue in *Dominos* and was not moved by Statements of Interests filed by DOJ in other similar ADA-related cases holding that those Statements of Interests "did not hold water."  *Dominos*, 2017 U.S. Dist. LEXIS 53133, *17.  He held the same view of consent decrees and settlements entered into by DOJ and non-parties.[3]  The DOJ appears to be no closer to

---

[3] Judge Otero noted that the Plaintiff in *Dominos* pointed to a settlement agreement between DOJ and Peapod LLC and another settlement agreement and stated that "these two examples highlight, rather than dispel the vagueness concern that forms the basis of" Dominos motion.  2017 U.S. Dist. LEXIS 53133, *21.  Plaintiff points to the same

engaging in the NOPR process because since this Motion was filed, DOJ put the NOPR on its inactive list.[4]

Based on the clear language of the ADA, the lack of applicable federal regulations, and the Eleventh Circuit's interpretation of the ADA as it relates to websites, it is clear that the Website is not a public place of accommodation, and thus not subject to the ADA. As Judge Lenard noted when she dismissed another of Plaintiff's complaints, "the majority of courts agree that websites are not covered by the ADA unless some function of the website hinders the full use and enjoyment of a physical space." *Bang & Olufsen Am.*, 2017 WL 1957182, at *9. Plaintiff does not allege that the Website hindered his full use and enjoyment of any of Defendant's physical spaces.

### III.   PLAINTIFF'S ACTION VIOLATES IMPORTANT DUE PROCESS PRINCIPLES

The relief sought by Plaintiff in this action is fundamentally unfair and violates important due process principles. Plaintiff argues that LEGO failed to comply with his own vague and unspecified guidelines and argues instead that "when faced with a lack of specific scoping regulation, courts have held that general accessibility mandate of the ADA applies to websites." (Pl. Resp. at 14, ¶ 34.) That argument provides no comfort or certainty to any website owner or operator in the context of a private litigant's action like this one. In fact, despite demanding compliance with a specific standard in his Original Complaint, Plaintiff abandoned that approach in his Amended Complaint and now fails to point to any applicable standards or regulations,

---

   Peapod settlement agreement and offers the same vague solution to the problem that the NOPR is supposed to solve. (DE-37 at 9, fn. 3.)

[4]   *See* https://www.reginfo.gov/public/do/eAgendaMain;(inactive list: https://www.reginfo.gov/public/jsp/eAgenda/InactiveRINs_2017_Agenda_Update.pdf, both last visited July 27, 2017.

4823-0178-2860v.3                                                8

much less demand any exact standards or regulations. At present, it is not clear what standards LEGO must be required to meet. It should not be subjected to such uncertain standards.

Absent a court order, there are no legally enforceable guidelines or standards by which websites could be measured against. In *Dominos*, Judge Otero granted summary judgment because despite its NOPR, DOJ had not yet issued the long-awaited regulations. As a result of DOJ's inaction, Judge Otero held that it would be unfair to require Dominos or other website operators to read tea-leaves in an attempt to guess what standard may ultimately be required. 2017 WL 1330216 at *5. Plaintiff completely ignores *Dominos* in his opposition. Instead, he essentially argues that this Court should follow Judge Scola's approach in his *Winn-Dixie* decision because the defendant there made a similar argument. [DE-37 at 15, ¶ 37 to 16, ¶ 38.] *Winn-Dixie* did not involve the same level of analysis that *Dominos* does on this issue. Plaintiff's attempt to distinguish *United States v. AMC Entertainment, Inc*., 549 F.3d 768 (9th Cir. 2008) as discussed in *Dominos* misses the mark. Plaintiff argues that AMC had no notice of what standards it was expected to meet, while LEGO should have known. In reality, LEGO is in the same place that AMC was in. It has no idea what standards might be required of it. Indeed, as noted above, the DOJ itself has acknowledged that "clear guidance on what is required under the ADA does not exist." All that LEGO knows is that district courts across the country are divided on this issue. Plaintiff's resort to Statements of Interest filed by DOJ in various actions "hold no water," as Judge Otero stated.

## IV. VAGUE STANDARDS ARE NO SUBSTITUTE FOR LAWFUL RULEMAKING

Despite the NOPR, the DOJ has not yet acted. Plaintiff's failure to demand any actual standards is not a proper substitute for the required notice and comment period, which would lead to some form of regulation. This Court should not permit Plaintiff to substitute his own

judgment (in which he has failed to demand any identifiable standards) about what constitutes a broadly applicable minimum standard for accessibility in place of the NOPR.

While Plaintiff's Original Complaint demanded adherence to a certain standard, Plaintiff's Amended Complaint fails to suggest any guidelines.  As set forth above, courts have criticized the DOJ for attempting to regulate through litigation, much like Plaintiff does here, rather than through the difficult process of crafting regulations.  *See U.S. v. AMC Enter.*, 549 F.3d at 769 (sharing "First Circuit's frustration that the government could have solved this [interpretation] problem, without time- and cost- consuming litigation, by merely clarifying. . . through amendment or some other form of public pronouncement").

This action is not the appropriate method to determine what particular technical standard LEGO must meet and when it should meet those standards.  That work should be done through legislative process and the government.  That is why DOJ announced the NOPR.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint with prejudice, and awards it such other and further relief as is deemed just and proper, including its attorney's fees incurred in making this motion.

DATED:  July 27, 2017                                  Respectfully submitted,

|  |  |
|---|---|
|  | /s/ Matt Luzadder |
| Geoffrey W. Castello | Matt Luzadder (FBN:  0011286) |
| (admitted *pro hac vice*) | mluzzader@kelleydrye.com |
| gcastello@kelleydrye.com | KELLEY DRYE & WARREN LLP |
| KELLEY DRYE & WARREN LLP | Counsel for Defendants |
| Counsel for Defendants | 333 West Wacker Drive, 26th Floor |
| One Jefferson Road, 2nd Floor | Chicago, IL  60606 |
| Parsippany, NJ  07054 | Telephone:  (312) 857-7070 |
| Telephone:  (973) 503-5900 | Facsimile:  (312) 857-7095 |
| Facsimile:  (973) 503-5950 |  |

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2017, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court for the United States District Court, Southern District of Florida, by using the CM/ECF system.  I certify that all current participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system upon:

Jessica L. Kerr, Esq.
Jaci R. Mattocks, Esq.
The Advocacy Group
333 Las Olas Way, CU3, Suite 311
Fort Lauderdale, FL  33301
954-282-1858
Service Email:  service@advocacypa.com
jaci@advocacypa.com

/s/  Matt Luzadder
Matt Luzadder (FBN:  0011286)

Counsel for Defendants